## B. F. HASTINGS & CO., Respondents, *v.* THE BURNING MOSCOW G. & S. M. CO., Appellant.

Whether this Court, on reversing a judgment, may also order a sale under execution to be set aside.

Section 283 of Practice Act of 1861, and Section 8 of the Act of 1864–5, in relation to Courts of Justice, commented on.

Even if the Supreme Court on appeal from a judgment might order an execution and sale made before appeal to be set aside, yet it is clear that the District Court after case reversed has concurrent jurisdiction to do the same thing.

It is the proper practice after a judgment has been reversed in this Court, to move in the Court below, when these facts justify such proceedings, to set aside a sale made on execution under an erroneous judgment.

Sales under a *void judgment* are a nullity. But sales under a judgment merely erroneous are good, and pass the title to the property sold.

Whilst the mere reversal of a judgment will not invalidate a sale regularly made, there is no doubt Courts may, under proper circumstances, (when the rights of innocent parties are not thereby injuriously affected) set aside such sales.

A judgment for so much money to be paid in gold coin is not void. The judgment is valid, but the clause requiring it to be paid in coin is invalid.

All parties are bound to notice the invalidity of the latter clause.

Sales made under erroneous judgments will be set aside as far as can be done without injury to third parties.

When a judgment is reversed, the parties should as near as possible be restored to the condition they were in before error was committed.

A third party purchasing at a judicial sale, and paying his money, ought as a matter of policy to be protected.

When the judgment is merely modified, and the plaintiff has been the purchaser of property, it may or may not be necessary or proper to set aside a previous sale.

The sale in this case should be set aside : first, because there was an irregularity in the judgment which all parties were bound to notice ; and second, the plaintiff being the purchaser, the setting of the sale aside only replaces the parties in the position they occupied before error committed.

*Quere ?*  If a Sheriff advertises to sell property for gold only, can a stranger to the proceedings, who only connects himself with the sale by bidding, compel the Sheriff to receive paper ?

Even if a stranger could do so, he would not bid full value for the property, knowing he must have a lawsuit before he could compel the Sheriff to take the paper.

Appeal from the District Court of the First Judicial District, Hon. Richard Rising presiding.

The facts are stated in the Opinion.

*Thos. H. Williams,* and *B. C. Whitman,* for Appellants, made the following points :

The District Court having control of its own process, had jurisdiction to entertain and grant this motion. (8 Cal. 134 ; 14 ibid. 158, ibid. 177 ; 16 ibid. 202, Nash. Dig. Ohio, pp. 285, 286 ; paragraphs 2–5 ; 4 Scam. 374 ; 14 Cal. 667.)

Execution sales made under an irregular judgment which has been modified or revised, will be set aside.     (1 Tidd's Prac. 561–2 ; 14 Cal. 667.)

Where the plaintiff becomes the purchaser, he takes with notice of all irregularities.     (3d J. J. Marshall, p. 213 ; 14 Cal. 667, and authorities there cited.)

A sale for more than authorized by the judgment will be set aside.     (4 Dana, 99 ; 1 Nev. 613.)     Therefore, a sale for *something,* or *a thing* not *authorized* by law, should meet the same fate.

A sale contrary to the terms of the execution, should be set aside.     (3 Monroe, 342.)

Variation between the execution and the judgment, avoids the former.     (6 J. J. Marshall, 514.)

An irregular execution may excuse the officer, but not the party causing it to be issued.     (4 Littell, Ky. 308 ; 7 J. J. Marshall, 149.)

Upon the point of the direct injury to the defendant by the sale, the record shows that the difference between the judgment at the end of six months from the day of sale, and the sum necessary to redeem from the sale, is $1,357.85, against the defendant, the Moscow Co.

*Crittenden & Sunderland* for Respondents, made the following points :

The District Court had no jurisdiction to make the order applied for ; that is a subject over which this Court has exclusive jurisdiction.     (Acts of 1861, p. 363, Sec. 283.)

Acts of 1864–5, p. 111, Sec. 8.

An order of restitution could have gone from this Court with the remittitur.     Not having then been made, it is now too late.

No injury was done to defendants ; any bidder could compel the

Sheriff to take paper, so the defendant or a subsequent lien holder, may redeem in paper. (*Milliken* v. *Sloat*, 1st Nevada Reports.)

Where a sale has been made under a judgment not absolutely void, but subsequently reversed, the sale is not affected by the reversal, as a general rule, even where the judgment creditor is the purchaser. (*Woodcock* v. *Bennett*, 1 Cow. 711; *Bank of Ky.* v. *Van Meter*, 10 B. Monroe, 66 ; *Benningfield*, v. *Reed*, 8 B. Monroe, 102; *Reardon* v. *Lancy*, 2 Bibb, 202 ; *Brown* v. *Coombs*, 7 B. Monroe, 318 ; *Parker's Heirs* v. *Anderson's Heirs*, 5 Monroe, 451.)

The case of *Hastings* v. *Johnson*, 1st Nevada, is not in conflict with this proposition, and was correctly decided upon the above authorities. It was a case in which the *execution* varied from the judgment, and was not warranted by it.

The execution was void, and the sale was void, for it rested on *no* judgment.

The judgment in this case was not void, but, at the most, simply erroneous.

The Court had jurisdiction of the parties and the subject matter, and whatever its action, it could therefore only be irregular or erroneous, not void. (*Haynes* v. *Meeks*, 10 Cal. 110; *Grignon's Lessee* v. *Astor*, 2d Howard 319; *Reynolds* v. *Harris*, 14 Cal. 667.)

In *Reynolds* v. *Harris*, 14 Cal., it was decided that a sale made under an erroneous decree of foreclosure (the purchase having been made by the plaintiff) should be set aside; but the case is very distinguishable from the present case, and does not settle the principle to be applied here.

*Fourth*—There is a distinction between the cases on erroneous judgments and those on irregular executions. (See 1st Conn. 711.)

Opinion by BEATTY, J., BROSNAN, J., concurring.

This cause comes before us under the following circumstances: In the year 1865, plaintiff obtained judgment against defendant for something over twenty-eight thousand dollars. The judgment directed the same to be made in gold coin. Execution issued, and

defendant's property was levied on and sold. The execution directed the amount to be paid in gold coin; the advertisement stated the sale would be for gold coin, and the Sheriff, when the sale was made, announced it would be for gold. When the sale was made, one of the plaintiffs bid the amount of their judgment, including interest, costs, etc., for the property. There being no other bid, the Sheriff gave a certificate of purchase to the plaintiffs, who bid the amount of the debt. Whilst the bid was by only one plaintiff, it is admitted the same was made for the benefit of all the plaintiffs. Subsequent to the sale under execution, defendant appealed from that part of the judgment which required the debt to be made in gold coin. Upon that appeal, this Court directed the judgment to be so modified as to strike out all portions thereof directing the same to be paid or collected in gold coin.

After this modification was made, the defendant moved the Court below to set aside the execution which had been issued directing the collecting of the judgment in gold coin, and also the sale made thereunder. The Court refused to sustain this motion, and the defendant appeals to this Court.

The appellant makes two points. First—That the District Court had jurisdiction to set aside the sale made under an irregular judgment. Second—That when the plaintiff purchases under an irregular judgment, he must be deemed to be cognizant of that irregularity, and the execution and sale will be set aside. Upon the first point, respondents contend that the District Court has no jurisdiction; that jurisdiction of this entire subject has been given by statute to this Court. In support of this proposition, respondents refer to the 283d section of the Practice Act of 1861, and the eighth section of the Act of 1864–5, in relation to Courts of Justice, which are as follows: "Upon an appeal from a judgment or order, the appellate Court may reverse, affirm, or modify the judgment or order appealed from, in the respect mentioned in the notice of appeal, and as to any or all of the parties; and may set aside, or confirm, or modify any or all of the proceedings subsequent to or dependent upon such judgment or order; and may, if necessary and proper, order a re-hearing. When the judgment or order is reversed or modified, the appellate Court may make complete restitution of all property and rights lost by the erroneous judgment or order; and

when it appears to the appellate Court that the appeal was made for delay, it may add to the costs such damages as may be just."

" SEC. 8.    This Court may reverse, affirm, or modify the judgment or order appealed from, as to any or all of the parties ; and may, if necessary, order a new trial, or the place of trial to be changed. When the judgment or order appealed from is reversed or modified, this Court may make, or direct the inferior Court to make, complete restitution of all property and rights lost by the erroneous judgment or order."

The language of the 283d section of the Act of 1861, is certainly broad enough to confer on this Court power to set aside a sale under execution, made in any case which is reversed in this Court.    The other section (section eight of the Act 1864–5) we think does not by its terms embrace a proceeding of this kind.    It was probably intended merely to embrace those cases where specific, real, or personal property was transferred from one party to the possession of another, by the judgment or special order of the Court, and not to those cases where there was a sale made under an ordinary money judgment.

Whether the section in the Act of 1864–5 does or does not supersede that in the Act of 1861, may be somewhat questionable.

But we deem it unnecessary to decide this point.    Even if this Court has power under the Act of 1861 to make an order setting aside an execution and sale made under an erroneous judgment, we are clearly of opinion the District Court has a concurrent jurisdiction with this Court to afford the like remedy.    And we deem it the best and most regular practice to make such motion in the District Court.

Generally, to sustain such motion, many facts must be shown which would not be shown by the Transcript of the record used on appeal from the judgment.

It would be an absurd practice to burthen the Transcript sent to this Court with extraneous matter, only to be used on motion to set aside executions, sales, etc., after the reversal of the judgment.

The proper practice is, where a case has been reversed in this Court, to move the Court below to set aside any proceedings inter-

mediate the judgment and reversal, which have been prejudicial to the applicant.

How far the Court below can or ought to afford relief, will depend on circumstances.

Sales made under executions issued upon void judgments, are void and of no effect, except in so far as they may operate as a cloud on the title, and become the source of annoyance and litigation to the party whose property has been sold.

On the other hand, sales under executions regularly issued on judgments, which are erroneous but not void, are valid sales, and pass the title of the property sold.    The mere fact that the judgment is afterwards reversed will not invalidate the sale.

But whilst the reversal will not of itself invalidate the sale, there is no doubt but that Courts may and will set aside sales made under erroneous judgments, when reason and justice require it should be done, and the rights of innocent parties will not be injuriously af fected thereby.

This case presents some peculiarities not to be found in any of the cases to which the Court is referred.

The judgment itself was not void, but a valid and subsisting judgment for so much money.    To that judgment was added a clause requiring it to be made in gold coin.    This Court held in the case of *Milliken Brothers* vs. *Sloat* that such a clause is altogether invalid and of no effect.    That a defendant, notwithstanding such clause, might still pay the judgment in legal tender notes before the same was reversed or modified.    We, as yet, see no reason to change our opinion in this respect.

If we are correct in that opinion, then this part of the judgment is something more than erroneous.    It is absolutely void, and all persons would be bound to take notice that such a judgment could not be rendered by the Court.

If an execution follows a judgment which the Court could not under any state of facts lawfully render, all parties would be bound to notice the illegality of the judgment, and could not, we think, be held as innocent purchasers under such execution, unless the result of a sale thereunder would be precisely the same as under an execution upon a regular judgment.    Whether the advertisement and proclamation of a Sheriff that he will only sell for gold

8

coin, can operate injuriously to a defendant in execution, we will notice presently.

Whilst, as we have before stated, sales under erroneous judgments are clearly not void, it has been an established practice, (and such practice was settled upon the most obvious principles of justice and common sense) after a reversal of a judgment to set aside sales and proceedings thereunder, so far as it can be done without injuriously affecting the rights of third parties.

After a judgment has been reversed, the Court should, if possible, restore the parties to the same situation they occupied before the error was committed. If the plaintiff buys the property under an execution sale, made by virtue of an erroneous judgment, and still holds the property at the time the motion is made to set aside the sale, we can see no possible reason why it should not be done. If the purchase is made by a stranger, who has no reason to believe the judgment erroneous, both justice and the policy of the law require that the sale should be sustained.

The party having paid his money under a judicial sale should not be deprived of his property and turned over to a doubtful action against the plaintiff for the recovery back of the price paid. Such a course would be unjust and against sound policy ; it would prevent all bids at judicial sales.

When a judgment is modified, or only partially reversed, it might or might not be proper to set aside a sale when the plaintiff was the purchaser. If a judgment were rendered for $10,000, and defendant's property were sold for $8,000, the plaintiff being the bidder, and the judgment was afterwards modified so as to reduce it to $9,000, this would be no ground for setting aside the sale : for the judgment would still stand good for an amount sufficient to more than cover the property sold. But if it should be so modified as to reduce it to $7,000, there would be good grounds for setting aside the sale.

We think in this case there were two sufficient reasons for setting aside the sale. First, because the judgment and execution were both irregular, in a matter of which all persons were bound to take notice. Second, because the plaintiffs being the purchasers and holders of the property sold, the setting aside of the sale will

restore the parties to the position they occupied before the error or irregularity spoken of was committed.

It is said, however, by respondent, that no injury was done by this mode of sale, because any one might have bid at the sale so many dollars and compelled the Sheriff afterwards, by proper proceedings, to take the legal tender notes. This proposition is not entirely clear in our minds. There is no question that an individual may sell his property either at private sale or auction only for gold coin. If there is no credit on such sales there is no *debt*, and the Act of Congress in regard to legal tenders has no application.

If an individual may sell for gold coin only, we cannot see that the Sheriff could be compelled by a stranger to the execution to sell for money generally. It is true, he could be compelled so to sell by the defendant in execution. But if the terms of an auction sale are for gold on delivery of property or certificate of sale, we doubt whether a mere purchaser could compel the officer to take paper. But if he could, such a sale would still be injurious to the defendant in execution. No person would bid as much for property, with the expectation of having a lawsuit to compel the Sheriff to take paper money, as he would if he knew that such money would be received without question. We are of opinion the mode of sale was illegal, and injurious to the interests of defendant, and should have been set aside.

The order of the Court refusing to set aside the execution and sale are reversed.

The Court below will enter an order setting aside the execution and sale, and make all necessary orders to set aside, cancel and amend the proceedings under said execution and sale.