## O. S. HAZARD, PLAINTIFF, *v.* THOMAS COLE, JR., ET AL., DEFENDANTS.

FINDINGS—PRACTICE.—When no testimony is reported in a statement, from which this court can determine as to the propriety or impropriety of the findings of the court below, the presumption is that the testimony was, in every respect, sufficient to support the findings.

STATUTE OF FRAUDS—CHANGE OF POSSESSION.—The statute of frauds does not require personal property to be removed from the place where situated when sold. It does not in any sense refer to the place, but to the actual and continued change of possession.

RECORD, MATTERS OF.—In respect to matters of record in which two parties are interested, they are within the knowledge of both, and neither party has a right to rely upon the recollection of the other.

JUDGMENTS—IMPEACHMENT—FRAUD.—A judgment can only be impeached in equity for fraud in its concoction, and in no case for mere irregularity

JUDGMENTS—GOLD COIN.—A judgment for gold coin is not in any event void because it is so rendered. It may be irregular, but is then subject to modification only, either in the same court on motion, or on appeal by this court.

SHERIFF'S SALE—VOIDABLE JUDGMENT.—A purchaser at a sheriff's sale, under execution, upon a judgment which is voidable only, acquires a good title.

WAIVER—ACQUIESCENCE—PRESUMPTION.—What has been done and long acquiesced in until the rights of third parties have grown up thereunder, should be presumed to have been rightly done.

SHERIFF'S SALE—PURCHASER AT SHERIFF'S SALE.—A purchaser under execution does not depend for his title upon the fact or the regularity of the sheriff making such sale.

BILLS OF EXCHANGE—DAMAGES.—The language of the statute concerning the damages to be allowed upon protested bills of exchange clearly imports that it was not the intention of the legislature to restrict such damages to bills drawn by *one* person or corporation on another person or corporation elsewhere.

CERTIFICATE OF SALE—FILING—NOTICE.—The filing of a certificate of sale of real estate by the officer making the sale, and in the manner prescribed by statute, imparts to all the world constructive notice of the estate acquired by the purchaser under it, as well as the fact of sale and its legal consequences.

PRESUMPTION—JUDGMENT.—On motion for new trial, or on appeal, every intendment is in favor of the judgment or ruling of a court of record. The party complaining must show error affirmatively.

FINDINGS.—It is not a ground for a new trial that the findings were not filed until after the adjournment of the term of court.

CASE adjourned into the supreme court from the district court of the third judicial district, Owyhee county.

*Martin & Johnson and McBride & Henly* for the plaintiff.

*Rosborough & Preston, Scaniker & Burmester, Frank Ganahl, F. E. Ensign and S. A. Merritt* for the defendants.

BOWERS, C. J., delivered the opinion of the court, KELLY, J., concurring specially.

This action was commenced in the third judicial district court, on a bill filed, in which is alleged several distinct grounds of relief, concluding with a general prayer, that the court, by its judgment and decree, may give such relief "as the nature of the circumstances of this case may require." Upon the trial the court below dismissed the bill, and gave judgment for costs in favor of defendants. Motion for a new trial was made. Upon the hearing of the motion in the court below, upon suggestion of the judge, counsel for plaintiff and defendants in open court consenting, the cause was adjourned to this court, under and in accordance with the terms and provisions of section 326 of the civil practice act, and the question is, shall this court advise and direct that the judgment and decision of the court below rendered on the second day of July, A. D. 1868, be vacated and set aside, and a new trial ordered? The case was tried before Judge Cummins, and the facts found by the court were:

1. That on the eleventh day of September, 1866, the defendant, the Lincoln Silver Mining Company, by its assisttant treasurer, C. F. Balcom, at Silver City, thereunto duly authorized, drew its bill or draft for ten thousand dollars on its treasurer in Providence, R. I., payable at the latter place to said defendant Cole, in United States gold coin, in consideration of advancements before that time made by said Cole to said company, at Silver City, in United States currency, which amounted to that sum at the rate of about seventy-two cents in the dollar; and Cole afterwards, and before the nineteenth day of October, 1866, made further advancements to said company, in legal-tender notes, amounting to the sum of one thousand three hundred and eight dollars and ninety-five cents, at the rate aforesaid, for which said company agreed to pay Cole the said sum of one thousand

three hundred and eight dollars and ninety-five cents, in gold coin; that said Cole caused said bill or draft to be presented to the treasurer of said company, in Providence aforesaid, for payment; the same was not paid, and was then and there protested for non-payment; that said Cole afterwards, and on the said nineteenth day of October, 1866, brought two actions against said company in the district court for said county, one on said draft and the other on said account, and caused the property of said company, consisting of a quartz mill and certain personal property, to be attached in said suits, and on the thirtieth day of October, 1866, recovered judgments in his said actions, respectively for the sums of twelve thousand six hundred and thirty-eight dollars and eighty-seven cents, including interest and costs and twenty-five per cent. damages on said draft or bill of exchange, and for one thousand three hundred and seventy-two dollars and twenty-five cents debt and costs, in both of which judgments was included a clause that they be paid and collected in United States gold coin.

2. That on the third day of September, 1866, said company was indebted to said plaintiff on account in the sum of seventeen thousand dollars for advancements before that time made by him to said company on like terms and rates as those by said Cole, and then agreed to make further advancements to said company to the amount of about three thousand and three hundred dollars, for which he gave his due bill to said company, and then and there received from said company, through said Balcom, a promissory note of said company, dated third of September, 1866, for thirty thousand dollars, payable in legal-tender notes at New York, on demand, to said Hazard, with interest at the rate of two per cent. per month; that said Hazard afterwards paid to said company the amount of said due bill, making the total of his advancements to said company twenty thousand and three hundred dollars, which was the consideration for said note, and the difference was added in order to make up the difference between currency and gold coin at that time in New York city, it being understood between the parties, as in the case of said Cole, that such

advancements were made at gold coin rates; that afterwards, and before the nineteenth of October, 1866, said plaintiff made further advancements to said company, amounting to about one thousand five hundred and eight dollars and ninety-four cents, on account; that said Hazard on the ninteenth of October, 1866, commenced his action in said court against said company for said indebtedness; caused attachments to be levied on the same and other property of said company subsequent to those of said Cole, and on the thirtieth day of October, 1866, recovered judgment thereon against said company for the sum of thirty-one thousand six hundred and twenty dollars, to be paid and collected in currency, and the further sum of one thousand five hundred and eight dollars and ninety-four cents, to be paid and collected in United States gold coin, and for a further sum of two hundred and ninety-one dollars costs.

3. That by agreement of the judgment creditors executions were stayed on said judgments for sixty days, by entry in the record, for the purpose of giving time to said company to pay up and resume their operations.

4. That said company failing to pay up and resume their operations, said Cole, on receiving notice of the intention of said company not to pay up and relieve their property and prosecute their business, on the ninth of March, 1867, caused executions to be issued on his said judgments to the sheriff of said county, who thereupon, on the fourteenth of March, 1867, sold the personal property of said company, so attached, as aforesaid, for a sum sufficient to satisfy the smaller of his said judgments and costs, and the further sum of two thousand one hundred and forty-two dollars and forty-seven cents, which was applied to the other and larger judgment, and on the sixth day of April, 1867, sold the mill premises and appurtenances of said company for the sum of eleven thousand four hundred and thirty-five dollars and fifty-four cents, in full satisfaction of the balance due on said larger judgment. That said Cole at said sales became the purchaser of said mill premises and most of said personal property. That said mill premises consisted of a small amount of land in the vicinity of Silver City, with the

mill, office, boarding-house, and other tenements pertaining to the establishment, all situate on the same lot; that said personal property (except a portion of the firewood designed for milling uses, which was one or two miles up the gulch from the mill, the balance, which was the larger portion thereof, being stacked on the lot near the office and mill) was some of it in the mill, some of it in the office, some of it in the boarding-house, and a lot of lumber on said lot. The weather being inclement and wintry the sale was held in the mill, and the sheriff, and also said Cole, announced to the persons present the property was open and free to inspection for any one desiring to bid, and all persons attending the sale had an opportunity to inspect the property if they desired.

5. That said Cole, on sale of said personal property, received possession of the personal property so bid in by him, hired a keeper to hold and take care of the same, and kept the possession of the same until he sold it to defendant Wilson in December, 1867; and the sheriff, on the sale of the mill property on the sixth day of April, 1867, filed in the recorder's office of said county a certificate of such sale, and delivered to said Cole a duplicate of the same.

6. That at the time of said sales, and for some time before and after, there was a great depression in the mining business and property in said county, as well as in other businesses, and a great scarcity of money, in consequence of which there was little or no demand for the kinds of property sold. No one of the several mills in the county were running, and no mines were yielding returns. That said Cole was the highest and best bidder for the property purchased by him at said sales, and no bidder offered any higher or better price therefor; that the executions on his said judgments were in their terms in accordance with the judgments, and they were read to the bystanders on the commencement of said sales without further announcement of the terms of sale.

7. That the attorney of said Cole who acted in procuring his said judgments, had no special or other powers from said Cole than such as pertain to the ordinary functions

of an attorney at law, in respect to the business of his client.

8. That there was no contract between the plantiff and the defendant Cole, to the effect that plaintiff should forebear suing said company in consideration that Cole should give him the first information of the dishonor of his said draft for ten thousand dollars, and that Cole should give him such first information in consideration of such forbearance, and institute simultaneous action and obtain simultaneous attachments with said Hazard, but at most only a promise by said Cole at the request of said Hazard, that he would inform him of the fact of such dishonor in case that it occurred; which promise said Cole fulfilled by giving such information to Hazard on the night of its receipt.

9. That on the seventh of December, 1867, Cole obtained a sheriff's deed of said mill premises under said sale, and on the same day by deed conveyed the same to defendant Wilson, and at the same time sold and delivered to said Wilson the personal property so purchased by him, and said Wilson then and there entered into the possession of said property under said deed and sale, and still holds the same.

10. That at the time of his purchase from said Cole, defendant Wilson had no knowledge of any claim, demand, or alleged equity of said Hazard, except that he was a judgment creditor of said company, subsequent to said Cole.

As conclusions of law applicable to the facts aforesaid, the court found:

1. That plaintiff has established no equities that would entitle him to the relief sought, or to any relief which this court could give.

2. That the judgments of said Cole were valid subsisting judgments, and that the sales thereunder were valid; at the most, they were merely irregular, so far as the clause requiring the same to be paid and collected in gold coin, and which irregularity might have been corrected by application to the court in which said judgments were rendered, or in the appellate court.

3. That no application or showing having been made by any party in interest to the court in which said judgments

were rendered, to correct said irregularities, or to set aside the sales made thereunder or by virtue thereof, that said defendant, John M. Wilson, acquired a good and valid title to said personal property and real estate purchased by him of said Cole on the seventh day of December, 1867.

4. That there was no fraud in the judgments or sales thereunder, and this court does not find grounds in the alleged inadequacy of price to disturb the sales.

5. It results that the defendants are entitled to judgment against the plaintiff for their costs, and it is so ordered.

As appears from the statement, the motion for a new trial is based upon two general grounds: 1. Insufficiency of the evidence to justify the decision of the court, and that such decision is against the law. 2. Errors in law occurring at the trial and excepted to by the plaintiff. No exception was taken to the first, second, third, fourth, sixth, seventh, eighth, or ninth finding of fact. The only exception to findings of fact which is shown in the statement, is to the fifth and tenth, but in an assignment of errors and exceptions, signed by plaintiff's attorneys and filed as a paper in the case, after having been served upon defendant's attorneys (which, however, has no certificate of the judge who tried the case attached to it showing its correctness), the tenth finding is excepted to as well as several exceptions for failure to find, etc.

Upon the argument, counsel on each side took an extensive range, pressing the consideration of their respective views touching each particular fact as found by the court; and while we do not desire that it shall be considered as a precedent in future cases, we propose to consider the case upon this basis, as argued, and it is sufficient to say of the several findings numbered respectively first, second, third, fourth, sixth, seventh, eighth, and ninth, that no testimony is reported in the statement from which this court is able to determine either as to their propriety or impropriety, and we consider it well settled that in such case this court is bound to presume that the testimony was in every respect sufficient to support the findings. The testimony in reference to the fifth finding appears in the statement, and it is

insisted by counsel for plaintiff that it is insufficient to support the same. Springer, the sheriff, testified that the sale was made by his deputy, himself not being present.

Ezra Mills testified: "I was deputy sheriff in March, 1867. I made the sale of the personalty March 14, 1867. On the same day of sale I made a bill of sale to Cole, and put him in possession."

Thomas Cole testified: "At the sale I received a bill of sale of the personalty bought by me, and the same time received possession of it. I moved over there, boarded and slept there, and kept personal supervision and possession of the property until I went below, when I hired and paid a man to take and hold possession of it for me until I came back. I kept possession of it from the time bought until I sold the property to Wilson."

In addition to the above it also appears that Cole afterwards sold a large portion of the personalty and delivered it to Wilson. The foregoing is extracted from a large mass of testimony directed to this point, and appears to fully support the finding of the court, unless the questions and considerations of law urged by plaintiff's counsel shall have the effect to render such proof of facts inapplicable to this case.

The testimony shows that the personalty was sold on the premises of the Lincoln mill company, against whom the execution ran, and that after the sale and purchase thereof by Cole, the property was left upon the same premises, and it is insisted that this being true, there was no such actual and continuous change of possession as is required by the fifteenth section of the "act concerning fraudulent conveyances," which provides that "every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the thing sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor or the creditors of the person making such assignment, or subsequent purchaser in good faith."

It is urged that while there can be no question as to the

delivery at the time of the sale, inasmuch as the goods were allowed to remain in the same place and upon the premises of the judgment debtor, the "actual and continued change of possession" necessary and requisite could not be, and is therefore conclusive evidence of fraud, and that the goods, in view of the provisions of law, could only be permitted to remain in the same place such reasonable time as was necessary to remove them. There are several reasons why this theory is unfounded in this case, and it is not necessarily true in any conceivable case. 1. The statute does not in any sense refer to the place. The place may be a freehold of the purchaser and in his possession, or he may have purchased the premises in or upon which the goods were sold at the same time, or part of the same purchase, and entered into the possession thereof. Will it be contended that in either of the cases put, the goods must be "removed within a reasonable time"? Certainly not; and yet, if a removal be necessary in the one case, it is in the other, for if the place is in any sense involved in the meaning of the statute, there must be a removal in every case. If a removal constitute any part of the "actual and continued change of possession" referred to in the statute, it goes to every conceivable transaction, and no sale will be held free from objection without it. An outgoing tenant sells his household furniture and chattels to the tenant coming in, who enters, uses, occupies, etc. The sale is void under the statute as against the creditors of him who sold the goods, because "they were not removed within a reasonable time." This is correct reasoning if the place has any bearing upon the matter.

We are, however, fully satisfied that the 'real question to be determined in the consideration of this and every similar case is, Who has the possession and control of the goods, he who purchased under the sale, or he who was the owner before such sale? If it be found that the goods are under the supervision and dominion of the party claiming to have made the sale, it (the sale) is absolutely void as to creditors, etc., though the goods have been moved a thousand miles. If, on the contrary, it is found that the goods

are under the supervision, dominion, and control of the purchaser, the sale is good, though no removal follow such sale. Webster says of the word "possession," in defining it when used in law, "the having, holding, or detention of property in one's power or command; actual seisin or occupancy; ownership, whether rightful or wrongful." It can matter not whether Cole's possession was held upon the premises of the Lincoln mill property, not even had it appeard that he maintained such possession by actual force. That he did have possession and the control of the property does not admit of a doubt. The officer making the sale swears he gave him possession. He himself swears he received possession from the officer, and immediately went upon the premises and retained under his own control and that of his agent the goods until he subsequently sold them, and the fact that he did subsequently sell and deliver the goods to another mathematically demonstrates its truth.

Again, in order to sustain the sale in view of the meaning and intent of the fifteenth section before referred to, it is neither important nor necessary that the goods should be or remain in the possession of the purchaser. It is only essential that they be not allowed to revert to or remain in possession of the vendor. In this case, the sale took place in Owyhee county. The goods were sold in and upon the premises of the Lincoln mill company, at or near Silver City. The sale took place on the fourteenth of March, 1867. In the complaint in this action, which was filed February 10, 1868, it is alleged, "That for more than a year last past, said defendant, the Lincoln Silver Mining Company, has refused payment of its indebtedness, and has had no agent, employee, or representative in this territory," etc. This allegation the plaintiff would not be permitted for any purpose to dispute, and when considered as true, renders it absolutely impossible that the goods sold at said sale could have reverted to or remained in possession of the vendor, to wit, said company.

The tenth finding is excepted to, and the testimony reported at some length, but we are unable to discover a sin-

gle reason why it is not supported in every particular by the evidence.

Hazard and Wilson appear to have been the only witnesses examined upon the questions involved in this exception, and did it appear that the testimony of these two stood one against the other, in their statements conflicting, the rule clearly is, that we should hold the finding supported. But upon examining the testimony, we find that Wilson swears positively that he had no notice except such as the record gave him, and Hazard says nothing about notice. Objection and exception is also made to the findings of the court in this, that the court omitted to find a fraud upon Hazard, for that Cole admitted to Hazard and others, that the time for redemption did not expire until the month of December, 1867. We are unable to see how such finding was material or in what manner it could have affected the ultimate conclusion. The testimony upon this point is meager and unsatisfactory. But if it be conceded that a finding upon the fact complained of would have been as claimed by counsel, there is no tenable ground for designating it a fraud. The time at which the right to redeem expired was ascertainable in the office of the recorder of the county, and was equally within the reach and knowledge of both Cole and Hazard, and neither party had a right, or was in any manner justifiable in relying upon the recollection of the other.

Exception is also made, that the court omitted to find that the defendant Wilson entered upon the premises under a lease from the agent of the Lincoln silver mining company with the knowledge of Cole, and that he held the same under such lease until December, 1867, Cole consenting. There is no force in this objection. It can make no difference by what terms Wilson held the premises before purchasing, though it had been by brute force, the only material question being, did he obtain the title by his purchase? This having been answered in the affirmative by the court, such finding as is asked could not affect the case.

The statement shows only a single exception to have been

made to any ruling of the court during the progress of the trial, and that is as follows: "Plaintiff also assigns as error the refusal of the court to admit in evidence the amended judgment of plaintiff, to which ruling plaintiff excepted on trial." There are, however, six assignments of error contained in the paper hereinbefore referred to, to a part of which reference is made in the statement in the following words: "The court erred in the third, fourth, fifth, and sixth exceptions to conclusions of law and assignments of error on file and served." The first of these objections has reference to the facts as being insufficient to support the conclusion, and has already been considered. The second, third, fourth, and fifth are directed particularly to the character of Cole's judgments, as being void, irregular, insufficient to support the sheriff's deed and to carry the title, and fraudulent, and may well be considered together in what we shall have to say as to said judgments.

It seems to be conclusively settled, that a judgment can only be impeached in a court of equity for fraud in its concoction. It is also said, on the highest English authority, approved and adopted by Kent and Story, that there is no case in which equity has ever undertaken to question a judgment for irregularity. (2 Story Eq., sec. 1575, note 1; 3 Johns. Ch. 275; 4 Id. 85; 6 Id. 234; 20 Johns. 677; 7 Cal. 443; 34 Id. 301.)

The complaint in this case charges no fraud in obtaining the judgments sought to be set aside, except the general allegation that they were obtained in fraud of the plaintiff's rights. It is urged that the judgments were void, in that they were rendered for gold coin. They were not void. The most that can be said of the judgments on this ground, in any event, is, that they were irregular, and might have been modified on motion in the same court, or on appear by the appellate court. (*Betts* v. *Butler, ante,* 185; 2 Nev. 100; 27 Cal. 100, 496.) While a sale under a void judgment passes no title, if the judgment is merely voidable for irregularity the sale is good. (8 Cal. 568.) A purchaser at sheriff's sale under execution issued upon a judgment which is voidable only, acquires a good title. (1 Cow. 622.)

In *Hastings* v. *Burning Moscow,* 2 Nev. 100, it is expressly held that a sale on a judgment and execution for gold coin was valid, and passes the title; but the court says that upon motion or on appeal and modification of the judgment, where the judgment creditor purchased the property sold, and still holds it, the court will set aside the sale. The reason for this rule is given by the court in *Reynolds* v. *Harris,* 14 Cal. 667, thus: The judgment creditor still has his judgment, and it works no injury or loss to him, but in case of a stranger purchasing at the sale, or from the purchaser, after he obtains a sheriff's deed, he can not be remitted by the court to his former position. The court says: "If upon reason and authority the questions decided in this case were left in such extreme doubt, that we might well incline to the one side or the other, considerations of public policy would impel us to solve the doubt in such manner as to promote the repose of titles held under judicial sales, rather than by technical niceties to overthrow them."

In view of the reasoning of the supreme court of California it may be said that if either defendants or creditors have the right to come into a court of equity and impeach and set aside judgments at law and sales thereunder, on the ground that the judgments and the process thereunder contained a clause for their collection in gold coin, the direct effect would be to unsettle titles to a large portion of property within this territory, and to ruin hundreds who have reposed confidence in judicial sales, and paid valuable considerations for titles thereunder.

Far better would it be upon reason, and we think it to be well settled upon authority on the doctrine of waiver and acquiescence, to hold that what has been done and long acquiesced in, until rights of third parties have grown up thereunder, should be presumed to have been rightly done. All mere irregularities may be waived; besides, in all these cases of judgments with specific clauses for gold, gold dust, or gold bars, when they have been satisfied by sale, and titles thereunder have accrued to third parties, the judgment upon the doctrine of waiver should in each case be considered the law of the case, and an attempt to impeach

such judgments and sales is as void of merit as if the debtor had paid such judgments without sales; for in effect it is then nothing more than a payment of the judgment.

Having said this much upon the theory that the judgments in this case sought to be set aside are irregular, because of the gold-coin clause contained, it may be well questioned if such clause be an irregularity.

In December, 1864, the legislature of this territory passed what is commonly known as the Specific Contract Act, which act was uniformly enforced until January, 1868, when its validity was questioned for the first time. And this court, as then constituted, held the said act void, as conflicting with the act of Congress, making the promise of the United States government a legal tender, etc., and while this court would not have been the first to disregard such decision, it is asserted that the supreme court of the United States, in a recent decision (which we have been unable to examine), have in substance and effect overruled it; but as this view of the case was not presented by counsel, said decision not having been issued at the time this case was argued, we are not satisfied to base our decision upon the point first made.

Some objection is made by plaintiff that there were two sales, and that the sheriff's return is defective, etc. It is sufficient to say of this objection, that a purchaser under execution does not depend for his title upon the return of the sheriff. (12 Cal. 133; 4 Wend. 506; 1 Cow. 623; 8 Cal. 186; 4 Id. 47; 4 Wheat. 506.) In this latter case, it was held that it mattered not what return the marshal made, or whether he made any return at all.

It is insisted that inasmuch as the draft which was the foundation of the larger of Cole's judgments against the Lincoln silver mining company was drawn by one agent or office of said company in this territory on another agent or office of the same company in Rhode Island, it was not in fact a bill of exchange and, as a consequence the addition of twenty-five per cent. to said judgment as damages under the act of this territory was fraudulent, and rendered the

judgment void.   We regard the better rule to be as laid down by Parsons (vol. 1, p. 62), that such a draft may be treated as either a bill or a promissory note.

In addition, by express provision of the act of January 11, 1866, damages are allowed on "bills drawn or negotiated in this territory, on any person or company," etc., which language, as we think, clearly imports that whatever the general rule may be, the legislature of this territory did not intend a restriction to bills drawn by one person or corporation, etc., here, on another person or corporation, etc., elsewhere. Nor do we, in any event, well see how such thing could be considered a fraud, such as to invalidate the judgment.   If the question was raised, or in any manner became an issue on the trial, it must have been ruled upon in some way by the court, and so became a judicial determination of the matters involved, and if erroneous, should have been excepted to, and corrected in the appellate court.

Much stress is laid by counsel in the argument, and some testimony reported in the statement, on what is termed Hazard's right to redeem the property sold under Cole's judgments, he being a subsequent judgment creditor, and upon the further fact, as alleged, that two certificates of sale were filed with the recorder.   We are ill prepared to admit that this question is in any wise entitled to our consideration, for the reason that the complaint is in no sense a bill to redeem, nor does the testimony show any offer to redeem within any known rule of law.   We may, however, remark that the filing of the certificate of sale by the officer making the sale in the manner prescribed by statute was intended to impart, and did impart, to Hazard and to all the world, constructive notice of the estate acquired by the purchaser under it— notice not only of the fact of sale, but of the legal consequences.   (31 Cal. 312, 313.)

The filing of the certificate imparts notice of certain facts, and the sequence of these facts is a question of law, and a mistake thereunder is at one's peril.   Hence any statement which may have been made by McQuade, Cole's attorney of record, as to what Cole claimed, or what were his rights in the premises, can matter not.   Hazard was bound, under

the rule just stated, as matter of law to know these things, and if he, as matter of fact, did not know, McQuade, Cole's attorney was perhaps not just the best person from whom the required information should have been sought.

There is nothing shown in the statement whereby it can be seen that the court erred in excluding the amended judgment offered in evidence by plaintiff.

On motion for a new trial, or on appeal, every intendment is in favor of the judgment or ruling of a court of record. The party complaining must show error affirmatively. It does not appear from the statement what the judgment or the amendment was; nor in what court; nor against whom it was rendered; nor that it was in any wise material to any issue in this case; and as a consequence of this, it does not appear that any material right was affected by the ruling complained of. In such a case the exception must be disregarded as immaterial. No error being shown, the ruling excluding the proffered testimony is conclusively presumed to be correct. (10 Cal. 267.) Nor is it ground for a new trial that the findings were filed after the adjournment of the term. They were filed within ten days after the trial, which is all that is required by the statute.

In conclusion, we do not hesitate to say that the facts found by the court are fully supported by the evidence, and are ample as a predicate to support the judgment. The omissions to find we have shown to be immaterial, as affecting no substantial right. We are unable to see any basis upon which it might be supposed that a new trial would result in any manner different from the former trial, and where such is the case a new trial will not be granted. (1 Cal. 213; 6 Id. 26; 1 Id. 285.)

The motion for a new trial must be denied and the judgment of the court below affirmed, and it is so ordered.

In passing upon this motion, we have considered it generally, and in so doing have passed upon several questions which it is insisted by counsel for defendants were not properly before the court. Consequently we consider it advisable to suggest that the proper practice to be adopted in the future on motion for new trial and on appeal is to

incorporate into the statement or transcript, as the case may be, every question of law or fact which the court will be called upon to consider.

Motion for a new trial denied.   Judgment affirmed.

KELLY, J., concurring:

The basis of this suit is laid upon the ground that the plaintiff, and defendant Cole, before the commencement of their said actions entered into a mutual agreement whereby they were to commence simultaneous suits and make their liens mutual and share *pro rata* in proportion to their respective claims by reason of the issuing of their said attachments, *i. e.*, that one should not be superior or stand preferred before the other.   The court on the trial did not find the proof sufficient to support these allegations in the bill.   No exceptions were taken, and counsel admit that they failed to show the several frauds in this regard.

The second and most potent ground which the counsel for plaintiff raise for setting aside the judgments of defendant Cole is, that said judgments were rendered for gold coin; that executions issued for gold coin only; that bids were not received in any other kind of money, and such proceedings were a fraud upon plaintiff's rights and equity of redemption.

Since we have had this case under consideration, the supreme court of the United States have decided the question in favor of gold-coin judgments, and we are bound by that decision.

The third ground of complaint is, that Cole's judgments were obtained upon domestic bills of exchange drawn by the Lincoln gold and silver mining company, in this territory, upon their house in the state of Rhode Island, and that twenty-five per cent. damages are taxed up in said judgments.

We do not think this point is well taken.   The rule is well laid down in 1 Parsons on Notes and Bills, p. 632. He says: "It is not absolutely necessary that the drawer should be a different person from the drawee; for it is very common for a man to draw upon himself; and it has long

been held that such an instrument is a good bill of ex-
change.    The same principle applies when partners carry
on business at two different places, and one establishment
draws a bill on the other.    So, when a duly authorized
agent or officer of an incorporated company draws in be-
half of the company upon the treasurer, cashier, or other
officer of the company who has the control of or is charged
with the duty of disbursing the company's funds.    This is
in substance, it should seem, a draft of the company upon
itself, and may be treated either as a bill of exchange or
a promissory note; and it is a general rule that when it is
doubtful whether the instrument is intended as a bill of ex-
change or a promissory note, and it possesses the requisites
of each, it may be treated as either, at the option of the
holder."

The fourth ground of complaint by plaintiff is, that the
defendant Cole, not only taxed up the twenty-five per cent.
damages, but he also charged the interest on said bills of
exchange, and taxed the same in his judgments.    This is
undoubtedly true, and would on motion, at the proper time,
have been corrected by the court, and modified or reduced
the judgment about eighty dollars, or if the court had refused
to modify the judgment in this particular, such refusal
would be good ground for assignment of error on appeal.
It was a mere irregularity, and can not be attacked for the
first time by a bill in equity, either by the defendant in the
case or by a judgment creditor.    The bill must show some
fraud in the concoction of the judgment.    There is no fraud
contended for on this point, and it is doubtful whether the
district court would have the right to correct its own judg-
ment in such cases after the adjournment of the term.    It
is not probable that this error was discovered by anybody
until Hazard had made his ineffectual attempt to redeem
the Lincoln mill property; for he had contracted to Cole's
judgments, and would not have considered any fatal error
in the entry, or any conviction of fraud in a judgment that
he desired to purchase.

The next or fifth ground of complaint in the order in
which I am considering this question is to the fifth finding

of the court. The finding is as follows: "That said Cole, on sale of said personal property, received possession of the personal property so bid in by him, hired a keeper to hold and take care of the same, and kept the possession of the same until he sold it to defendant Wilson in December, 1867; and the sheriff on sale of the mill premises on the sixth of April, 1867, filed in the recorder's office of said county a certificate of such sale, and delivered to said Cole a duplicate of the same."

The delivery or possession of the personal property purchased by Cole at the sales, or any fraud in that particular, are not complained of in the bill filed by the plaintiff. But inasmuch as the court found upon this question, upon proof submitted at the trial, and now made a part of the statement, and in view of the able arguments of counsel and the importance the plaintiff attaches to this question, we have carefully considered the evidence submitted and do not find sufficient ground to overrule the opinion of the court as to this finding, or set aside the judgments on this ground. If there can be anything said in addition to what the chief justice has said in support of the possession claimed by Cole, it may be put upon the ground that Hazard was cognizant of, and consented to, Cole's possession, and the manner that he took and held the property. Webb swears that he bought some articles of personal property at the sales of the fourteenth of March, 1867, but at request of Cole and Hazard he did not take them away, but left them there under an arrangement with Hazard and Cole, so that the property might be kept together. Three days prior to the fourteenth of March, Cole and Hazard entered into a mutual agreement in writing for Cole to proceed and sell the property on his executions. The substance of the agreement was that the property should not be sacrificed; that Cole should be the purchaser if necessary, and turn it over to Hazard, by Hazard's paying Cole the amount of his judgments. The meaning of the contract was that Hazard, on paying Cole the amount due him with costs, he, Hazard, should be subrogated in law and equity to all the rights

of said Cole in every respect whatever in reference to said judgments and the property purchased at said sales.

It is true Cole was to sell the property according to law. Hazard, then, was interested in the title that Cole might obtain on his sales upon execution. Now, if Cole had committed a fraud or such a mistake in conducting the sales, then Hazard would have good ground to complain. He might seek his remedy in an action at law upon his contract, or if the property was still in the hands of Cole, he might ask to have the sales set aside. But, suppose that Hazard had been a party to the fraud. It could not be contended that he would be entitled to any relief. Hazard, although a witness on the stand, in his testimony now before us does not deny Webb's testimony that he had agreed with Cole that the personal property should be kept together on the premises, nor does he testify but what Cole, either by himself or his agent, had continued control of the property.

I do not take it that either party committed any fraud, and of course Hazard could not have participated in any. But let us see what relation Hazard stood in, and how he treated these sales. Hazard was at the sales and saw how they were conducted. He was several times on the premises, and swears that he had meetings there with the defendant, Wilson, in regard to Wilson's purchasing the property before he did make a purchase. He said, or must have known, that Cole had hauled the one or two hundred cords of wood from Long Gulch, and stacked it with the property or wood on the premises. He knew the character and dominion that Cole exercised over the property then, as well as he does now. He had, or at least he should have had, as much anxiety to make his money on his judgments as he has at any time since. If Cole did not have full and complete possession of the property and a valid title, why did Hazard stand by with his executions in his hand and refuse or neglect to levy ? The fact is, Hazard treated these sales as valid and sufficient. Can it be supposed that if Hazard had performed his contract with Cole for the purchase of the property which he was endeavoring and so

anxious to fulfill, Cole's dominion over the property was such that he could not deliver it over to Hazard, and if he did deliver it over no good and sufficient title would pass? Hazard did not so consider it, but on the contrary he stood by with his executions in his hand and assented to the proceedings that Cole had had under his executions by offering to purchase. For these reasons he ought not to complain of the character of possession which he assented to, and which could in no way injure him.

The next and last ground of complaint is the two sales of the real property made by Cole on his executions. It is contended by the plaintiff that these sales were a fraud upon his right of redemption. It appears that the first sale was made on the sixth of April, 1867. The time for redemption on this sale would run out on the sixth of October, 1867. The second sale was on the eighth of June, 1867. The time for redemption would run out on the eighth of December, 1867. The only return on these executions is made upon the last sale or alias execution.

"Cole says that he relies upon the first sale; that the last sale was made by his attorney, McQuade, in his absence, without his advice or authority." "Hazard says that Cole told him the last of August or first of September that his time for redemption would run out about the first day of December. I told him I thought I had sixty days more in addition to redeem in. He seemed surprised, but seemed to be satisfied. I found by conversation with Judge Miller that I did not have the sixty days to redeem in. When I came back from San Francisco I went to the recorder's office to see the exact time in which to redeem. I found two certificates of sales. McQuade, Cole's attorney, came into the office, and I asked him if he had collected any more money for me. He first refused to answer; then he said he had not. I then said, here are two certificates of sales. He said, that makes no difference; you will find the return was made under the alias execution and your rights have been preserved. We claim under the last sale. Next morning I met him there again, and he said, we claim under both sales; if the first is not good, the last is. In consequence

of the last sale I never paid Cole according to the written agreement made before the first sale."

Cole told me he did not expect I would. On the twenty-seventh day of November I tendered Cole nine thousand five hundred and eighty-two dollars legal-tender notes in redemption of the Lincoln mill property. He said in reply to my tender that his judgment was for gold coin, and that he would not take greenbacks; made no other objection to the tender. Martin Heman and E. H. Clinton, witnesses introduced by Hazard, testified in regard to the tender in substance the same as Hazard. Heman testifies that " Cole said to him that he would not take greenbacks, but if Hazard had tendered him coin, or greenbacks at coin rates, he would have taken it."

Now, if there was any fraud in these sales, or in consequence of there being two sales, and that fraud operated upon the rights of Hazard, and defendant Wilson was cognizant of or a party to the fraud, his purchase can not be protected, for the sales ought to be set aside. In the first place, can two sales be made of the same property for the same debt, without committing a fraud ? It sometimes happens, though we trust not often, that the preliminary proceedings of a sale, such as giving the requisite time or the manner of writing notices or posting the same, or the place and manner of conducting the sales, are wholly insufficient and not in accordance with the law, and the sale for that reason is invalid or void. Or suppose the legality of the sale may be doubtful, all of which is done without any fraud or intention of fraud, can the party proceed to make a second sale without applying to the court to set aside the first sale? Or suppose the second sale is made by mistake or without authority, does it vitiate the first sale so as to call for the aid of the court? If one of the sales were invalid and the other good, then the court could not aid the case, for the invalid sale would be no sale at all. But suppose that both sales were good so far as the proceedings can be determined; then the first sale would certainly be good, and the party might rely upon it even after the second sale had been made, did it not actually mislead or work an injury

to the judgment debtor or judgment creditors.   It might be
the better practice to apply to the court and there first de-
termine the validity of the sales, and set aside the doubtful
one, instead of taking the responsibility without the aid of
the court.   But such determination of the court would add
nothing to the validity of a valid sale or impart any better
notice to the redemptioner than any legal sale gives without
such determination.   Hence, we must conclude that two
sales might be made, and if either were good, such sale
should not be set aside merely because there were two sales.

The ground raised by plaintiff's counsel, that there being
no return made by the sheriff on the first execution, and a
return having been made on the second or alias execution,
invalidates the sale under the first execution, is not well
taken.   My associate has shown in his opinion that a return
may not be made at all, and still the sale may be good.
The authorities are decisive on this point, and it must be
so held when there is no fraud in the transaction.

We will now consider how Hazard treated these sales.
It is not contended that there was fraud practiced in making
the sales, or that there was anything wrong, except in the
fact that there were two sales.   Hazard says he should have
performed his agreement with Cole if he had not discovered
that two sales had been made.   This can not be, for by his
own testimony he swears that the first time he discovered
that two sales had been made, " was when he was in the re-
corder's office about the last of August or first of September,
1867," when the terms of his agreement with Cole show
that he should have performed certain conditions therein by
the first of July, 1867, two months prior to the time that he
discovered the two sales.

Admitting the facts as Hazard states them, by his own
observance of the record, that the time for redemption on
the first sale ran out on the sixth day of October, 1867, and
the time for redemption on the second sale would be on
the eighth of December, 1867, could he be deceived in regard
to his rights?   He complains that Cole told him his time
for redemption would expire about the first of December.
But he admits that he saw the record of the two sales, and

that Cole told him about the same time that he claimed under the first sale. From the time that Hazard says he first discovered that the two sales had been made until the time for redemption under the first sale, nearly forty days had intervened. But Hazard does not pretend he made any effort or offered to redeem during this time. On the twenty-seventh of November, 1867, about the time of redemption under the last sale, he offered to redeem by tendering greenbacks, which Cole refused because they were greenbacks, but offered to allow him to redeem if he would pay coin, as his judgments called for. Three months elapsed from the time he discovered the two sales, and Cole told he claimed under the first sale up to the time of his offer to redeem, and during this time Hazard and Cole and Hazard and Wilson were frequently together, and Hazard continually trying to buy or sell out to one or the other of these parties, and did not complain of any deception or fraud in the sales. But when his efforts to purchase had failed, he offers to redeem if Cole would take greenbacks.

Now, did Hazard at that time suppose he would obtain a good title to the property by redeeming from Cole? Did he suppose the sales were valid and his title would be good against the Lincoln mill company and against other judgment creditors? Most certainly he did. No better evidence could be given of this fact than his offer to pay over nine thousand dollars for the property and accept such a title as Cole had acquired under his execution sales.

It is true Cole sold the property to Wilson two or three days before the time for redemption would run out on the last sale. But of that there can be no complaint, even if Cole had claimed under the last sale, or if Hazard had a right to redeem therefrom. He must make a good and sufficient offer to redeem, one which Wilson (or Cole for Wilson) would be bound to accept, and unless he did make such offer and the offer was refused, he was not defrauded or prejudiced by the sale.

From the whole history of this case we are led to believe that there was no intention to deceive, and that Hazard was not deceived in the manner or mode of making the sales,

but on the contrary he knew all the facts, and all the time relied upon a hope to buy Cole or sell his interest to Cole or Wilson, or upon his right to redeem in greenbacks.

However great may be the burden to the plaintiff, or however strong his appeal for equitable interposition, he has not laid or relied upon any substantial ground for relief, and his accumulation of seeming grievances is swept away the moment he fails to show that actual fraud has been committed.

## ON PETITION FOR A REHEARING.

LEWIS, J.   It is, perhaps, well settled that this court will not grant a rehearing in a case like the one at bar, unless it is probable that a different decision from the former would be made.   It seems that in California, from whence the civil practice act and whole judicial system of this territory have been taken, and the decisions of whose courts are generally relied on as good law, has adopted and declared the rule in that state to be, that a rehearing will not be granted with the same indulgence as formerly.   (7 Cal. 330.)   And while this court will at all times be willing to correct any errors it may commit, yet in the present case we will not disturb the action of the court as formerly constituted unless manifest error has been committed.

And in the consideration of this petition it of course becomes necessary to examine to some extent the merits of the case looking at the bill, the answer and the facts, taking, however, the facts as found by Judge Cummins.   The basis of the whole proceeding is a contract alleged by the plaintiff to have been made between himself and the defendant Cole; that they should simultaneously commence suits by attachment, against the Lincoln mining company, in the event that a certain warrant in Cole's favor, drawn by an officer of the company upon the treasurer thereof, at Providence, Rhode Island, was protested for non-payment, or any other drafts upon the treasurer of the company were dishonored; he, Cole, being agent of the express company, had made such arrangements that he would have the first information of the dishonor of any drafts on the company.   It seems,

also, that at the time of this alleged contract, both plaintiff and Cole knew that the Lincoln silver mining company was largely indebted to sundry laborers, mechanics, merchants, and business men, who were urgent in their demands and threatened suits upon the first rumor of the dishonor of any such drafts.

The effect of the contract was this: the means of information possessed by Cole as express agent were to be used by Cole and the plaintiff to secure the amounts due them from the Lincoln company, by the attachment of its property, while the laborer and business man were "to be squeezed out," as it were. Now, the court below finds that there was no such contract. The old equity maxim, "that he who seeks equity must do equity," as also that a man must come into a court of equity with clean hands, applied to the alleged contract in this case, would not entitle the plaintiff to the relief sought, had he succeeded in establishing the contract. It is true that the parties might lawfully make such a contract, but if, after it was made, one should disregard it and secure himself first, equity would not interfere, but leave the parties to their rights at law, for the parties would only be placed in the same condition in which they by their agreement sought to place the other creditors.

It is also well established, that when a party has once had a plain, adequate remedy at law, and by his own laches loses it, equity will not relieve him. A court of equity will not encourage negligence, but will insist that every man take advantage of his legal rights at the proper time. The plaintiff herein had a plain simple remedy at law—the statute gave him the right to redeem. Had there been any question as to the amount to be paid, or the kind of money, the court would have saved his rights and determined the sum. But this is not a bill to redeem. The court below finds that the real estate in question sold for eleven thousand four hundred and thirty-five dollars and fifty-four cents. There is nothing to show that any such sum was tendered or offered, in accordance with the statute.

The judgments of Cole were in no sense void, but merely irregular, and would have been corrected on motion in the

proper court by the defendant, or on a bill to redeem by a creditor.

The rights of the plaintiff in this case are no greater than those of any judgment creditor. He had the right to redeem. The law gave him the right, and the court would have awarded it. In addition to the rights given him by law, Cole entered into a special contract with plaintiff, declaring the sum at which he might redeem, and plaintiff agreed to pay such sum. Looking at the whole case, we are of opinion that the conclusion of Judge Cummins, that there is no equity in the bill, was correct.

It is especially found by the court below that there was no fraud in the judgment or sale thereunder. We think that so far as the records in this case disclose the facts, Cole acted in entire good faith, his sole object being to secure his claim. The plaintiff, in addition to his statutory rights, had a written contract with Cole as to the sum to be paid and the time of payment. What act has Cole done that is inequitable? We have shown that equity ought not to enforce the contract claimed to have been made, and on which this bill is founded.

We will not in detail examine the points made by the plaintiff in his petition for a rehearing, but briefly refer to some of them. As to the question of practice in filing the finding after the entry of judgment, in the case at bar the objection is merely technical; it has worked no injury to the plaintiff. Whether the check or warrant on the treasurer of the company was, within the meaning of the statute, a bill of exchange, we think is of no moment in this case. We might hold it not to be such, and yet it would make no difference in the determination of this case.

As to the opinions of the attorney of Cole and statements of Cole himself, as to which sale he claims under, it can be of no moment; there could be but one valid sale, and the plaintiff was bound to know the law in that regard. And, as we have before suggested, the rights of the plaintiff would have been saved and protected by the court, and an adjudication would have been made as to which sale was legal, and the sum required to redeem would have been declared.

This is one of those unfortunate cases involving a large amount of property—wherein the plaintiff has slept upon his rights till they are gone, and then seeks the aid of a court of equity to restore him to the rights that the law had given him and by his negligence he had lost.

We have carefully scrutinized this case, hoping to be able to afford the plaintiff some relief—indeed, we were anxious to do so; but from the whole case we are satisfied that there is no equity in the bill ; hence the motion for a new trial was properly denied, and the petition for a rehearing will be overruled.

Rehearing denied.

NOGGLE, C. J.   I concur.

## ON A MOTION TO MODIFY THE JUDGMENT OF THE SUPREME COURT.

LEWIS, J.   This cause has been argued by counsel and submitted to the court on the motion of plaintiff to modify the order issued herein, of the eighteenth of May, 1869, and to order the clerk to transmit the papers on file to the court below.

This cause came on to be heard in the district court for Owyhee October 22, 1868, and was submitted to that court on motion for a new trial, and on motion of the district court the motion of the plaintiff for a new trial was adjourned into this court under the provisions of sec. 326 of the practice act.

On the twenty-first of January, 1869, this case came on to be heard in this court on the motion of plaintiff for a new trial. The said motion was argued at length and was submitted to and taken under advisement by this court February 3. On the fifteenth of May the opinion was announced and judgment entered herein denying the motion remanding the case. On the seventeenth of May the clerk was ordered to transmit the papers to the court below. On the eighteenth of May, on motion of counsel for defendant, the judgment of this court was modified so that this court not only denied the motion for a new trial, but also affirmed the judgment of

the court below. On the same day a *remittitur* was issued accordingly. On the twenty-second of May the order to the clerk to transmit the papers to the district court was vacated, and of the same date it was ordered that *remittiturs* in all cases decided at this term of the supreme court be issued on payment of the clerk's costs.

The above is the status of this case as we glean from the records herein.

The questions to be determined by this court, then, are:

1. Ought the said order be modified ?

2. Has this court the authority to modify the same ?

This court has no original jurisdiction in this case, and only acquired jurisdiction in pursuance of sec. 326 of the Practice Act.

That act, among other things, provides " that all questions of law arising on motions for a new trial in the district court may be adjourned into the supreme court for decision, and the supreme court may give judgment or remand the case."

We are of opinion that all cases that are brought into this court under the extraordinary provisions of this section, which serves to empower a district court to transfer parties litigant to this court without even saying "by your leave," should be determined solely upon the questions adjourned here for decision.

The case at bar was submitted to the district court on the plaintiff's motion for a new trial. The question then pending was: Shall a new trial be ordered or denied? That was the only question adjourned into this court for decision, and this court had no authority or jurisdiction to hear and, determine any other question. The latter clause of section 326, "or may make any order according to the justice of the case," in our opinion has no application to the case at bar. This court then having disposed of the only question before it, to wit, the motion for a new trial, could go no further, and we are satisfied that this court as formerly constituted were of that opinion, as evidenced by the order made herein of May 15; and the order of May 18, being made without authority, should be revoked.

As to the authority of this court to modify this judgment and order, that will of course depend on the fact as to whether the jurisdiction terminates on sending down the remittitur. The general rule seems to be well settled that this court loses jurisdiction of a case when the remittitur has been sent to and filed in the court below. (*Grayson* v. *Ruckle*, 1 Cal. 192; *Leese* v. *Clark*, 20 Id. 387; *Rowland* v. *Kreyenhagen*, 24 Id. 52.)

This general rule rests, however, on the supposition that all the proceedings have been regular, that no fraud or imposition has been practiced upon the court or opposite party; for if such appears to have been the case, the appellate court will assert its jurisdiction, and recall the case. Against an order or judgment improvidently granted, upon a false suggestion or under a mistake of facts, the court will afford relief even after the adjournment of the term, and will, if necessary, recall a remittitur. (24 Cal. 52.)

A decree will be set aside for irregularity after the record has been remitted. (*Wales* v. *Travis*, 8 Johns. 566; *Chamberlain* v. *Fitch*, 2 Cow. 243.)

Under rule 18 of this court, the plaintiff in this case has to the close of this term to file a petition for a rehearing, and the remittitur herein could not properly issue until the close of the term, unless so ordered by the court. No such order was made by this court. The remittitur was issued on the eighteenth of May. The general order directing remittiturs to issue on payment of costs has not, then, been made; and even if it had been so made, the defendants have not brought themselves within the rule.

Believing, then, that the order of this court, affirming the judgment of the court below, was at least improvidently made, and that this court has the authority to correct the same, we have no hesitation in so doing. As to the latter part of plaintiff's motion, asking that the papers be sent down, we are clearly of opinion that the papers in this case properly belong to the district court of the third judicial district. They were brought here by that court for the purpose of determining the motion adjourned, and when that question was disposed of, the purpose for which they

were here was accomplished, and being a part of the records of the court below, they should be returned there. It would be an unreasonable practice to leave the court below without any record of this case, and such as we are not willing to adopt. The papers should be returned.

We shall therefore order that the remittitur issued herein be recalled; that the order and judgment of this court of the eighteenth of May, 1869, affirming the judgment of the court below, be vacated and set aside; that the papers herein be transmitted to the court below, and that a remittitur issue in accordance with the order and judgment of this court of the fifteenth of May.

NOGGLE, C. J.: I concur.